UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AHMED IBRAHIM BAZZI,

    Petitioner,

v.                                                  Case No. 2:05-cv-27
                                                         HON. GORDON J. QUIST

ROBIN BAKER,

    Respondent.
_____/

**REPORT AND RECOMMENDATION**

        Petitioner Ahmed Ibrahim Bazzi is a federal prisoner currently incarcerated in the Chippewa County Jail. Petitioner is in the custody of the Department of Homeland Security, Bureau of Immigration and Customs Enforcement (BICE). Petitioner has filed an application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 seeking a release from custody.

        Petitioner is a native and citizen of Lebanon. Petitioner was initially detained by the Immigration and Naturalization Service (INS) in 1994, after being discharged from federal prison. On March 9, 1994, Petitioner had his green card revoked and was ordered to be deported or removed from the United States to Lebanon. On January 3, 1995, INS attempted to obtain travel documents from Lebanon. However, Petitioner failed to cooperate in the process. On January 26, 1995, Petitioner was released from custody.

        On May 13, 2004, the Immigration and Customs Enforcement (ICE), formerly known as the INS, took Petitioner into custody pending removal or deportation. On June 22, 2004, ICE requested travel documents from Lebanon. Petitioner again refused to cooperate with officials by refusing to provide information about the date and place of his birth. On October 18, 2004, ICE

served Petitioner with form I-229 and an instruction sheet informing Petitioner of the need to cooperate with the Lebanese Consulate in obtaining his travel documents. On October 29, 2004, Petitioner was interviewed via the telephone by a Lebanese consulate official. However, Petitioner continued to be uncooperative.

Petitioner maintains that pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001), six months is the presumptively reasonable period during which the ICE may detain aliens in order to effectuate their removal. *Id.* at 702. Petitioner further states that interim administrative regulations, set forth under 8 C.F.R. 241.13(b)(2)(ii), recognize that the Headquarters of the Post-Detention Unit (HQPDU) has a six-month period for determining whether there is a significant likelihood of an alien's removal in the reasonably foreseeable future. Petitioner contends that this period elapsed on November 14, 2004, and that he must now be released from custody.

The respondent has filed a response to Petitioner's application for relief (docket #7) and the matter is now ready for decision. After a review of the record, I am recommending that Petitioner's request for relief be denied.

As noted above, Petitioner claims that his continued detention is unlawful and that he is entitled to release from custody pursuant to § 2241. An alien's detention pending removal from the United States is governed by Section 241(a) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(a). The law provides that when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days. 28 U.S.C. § 1231(a)(1)(A). During the removal period, the alien must be detained. 28 U.S.C. § 1231(a)(2). If the alien has not been removed within the 90 day period, the alien shall be subject to supervision under regulations prescribed by the Attorney General. 28 U.S.C. § 1231(a)(3). However, the statute provides that an alien who has been determined by the Attorney General to be a risk to the community or unlikely to

comply with the order of removal, may be detained beyond the removal period. 28 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the United States Supreme Court addressed the legality of post-order detention in the cases of two aliens previously admitted to lawful permanent resident status, but subsequently ordered deported. *Id.*, 533 U.S. at 684. The Court held that the "presumptively reasonable period of detention" in such cases was six months. *Id.* at 701. The Court stated that "[a]fter this six month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence to rebut that showing." *Id.* The Court further noted that for the detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Finally, the Court held that not every alien must be released after six months, and that an alien may be confined until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*

In *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2004), the Sixth Circuit held that removable aliens may be detained for a time reasonably required to complete removal proceedings in a timely manner. *Id.* at 268. Should the process take an unreasonably long time, the detainee may seek relief in habeas proceedings. *Id.;Habtegaber v. Jennifer*, 256 F. Supp. 2d 692, 696 (E.D. Mich. 2003). The post-order custody of deportable aliens such as Petitioner is reviewed under the procedures set forth at 8 C.F.R. §§ 241.4 and 241.13. The court notes that § 241.13 establishes procedures to determine whether there is a significant likelihood that an alien will be removed from the United States in the foreseeable future.

Respondent contends that Petitioner has not met his burden of showing that there is no significant likelihood of his removal from the United States within the foreseeable future. As noted by Respondent, the aliens in *Zadvydas* could not be deported because one was from Cambodia, a country with which the United States has no repatriation agreement, and the other was born in a refugee camp, so was not a citizen of any country. *Id.* at 684, 686. Respondent further states that in contrast to the aliens in *Zadvydas*, Petitioner in this case merely asserts a lack of response from Lebanon concerning the request for a travel document. Moreover, Respondent correctly notes that some federal courts have held that mere bureaucratic delay in the detainee's home country in processing the request for a travel document is insufficient to show that there is no significant likelihood of removal. *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366-67 (N.D. Ga. 2002); *Khan v. Fasano*, 194 F. Supp. 2d 1134, 1137-38 (S.D. Cal. 2001).

As noted above, Respondent asserts that Petitioner has refused to cooperate with officials in the process of getting his travel documents. In support of this assertion, Respondent offers the affidavit of Daniel Wells, who is employed as a Deportation Officer with the Fugitive Operations Group with Immigration and Customs Enforcement (ICE), Department of Homeland Security. According to Mr. Wells' affidavit, Petitioner has continuously refused to provide identity documents, such as a birth certificate, since January 3, 1995, and that Petitioner has refused to cooperate with the Lebanese Consulate during the consular officer's telephonic interviews. Mr. Wells attests that Petitioner's failure to cooperate is creating the delay in obtaining travel documents from Lebanon for Petitioner. Mr. Wells further attests that Lebanon does not have a policy of refusing admission to its citizens who commit crimes abroad and that, to date, the Lebanese government has not failed or refused to issue any travel documents or passports to their citizens or nationals that have come into the custody of the Detroit Fugitive Operations Group. (*See* Daniel

Wells' Affidavit, ¶ 4 - ¶ 18.)  In addition, Respondent attaches copies of October 19, 2004, and February 10, 2005, Notices of "Failure to Comply Pursuant to 8 CFR 241.4(g)," informing Petitioner that he would not be released from custody because he had not demonstrated that he was making reasonable efforts to comply with the order of removal.  (*See* Exhibits 1 and 3.)  Respondent also offers a copy of a December 8, 2004, letter from Mr. Wells to Petitioner, informing him that he would remain in custody until he demonstrated that he was making reasonable efforts to comply with the order of removal.  (*See* Exhibit 2.)

In upholding the continuation of an alien's two year detention, the Ninth Circuit found that, "We cannot know whether an alien's removal is a 'remote possibility,' *Zadvydas*, 533 U.S. at 690, until the alien makes a full and honest effort to secure travel documents." *Lema v. I.N.S.*, 341 F.3d 853, 856 (9th Cir. 2003); *Pelich v. I.N.S.*, 329 F.3d 1057, 1060 (9th Cir. 2003); *Kanteh v. Ridge*, __ F. Supp. 2d __, 2005 WL 1719217, *4 (D. Minn. Jun. 30, 2005).  In this case, it appears that Petitioner has not made such an effort.  In fact, Petitioner appears to have been deliberately uncooperative with the removal effort.  Therefore, in the opinion of the undersigned, he has failed to meet his burden of showing that there is no significant likelihood of his removal from the United States within the foreseeable future.

In summary, the undersigned recommends that Petitioner's request for habeas corpus relief be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.

- 6 -

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   October 24, 2005